IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Fidelity & Deposit Company of Maryland, | ) | Case No.  1:19-cv-49 |
| | ) | |
| Plaintiffs | ) | Judge: Benita Y. Pearson |
| | ) | |
| -vs- | ) | |
| | ) | |
| Omni Construction Company, Inc., et al, | ) | |
| | ) | |
| Defendants. | ) | |

JOINT RESPONSE OF DEFENDANTS TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

Defendants, Omni Construction, Inc. ("Omni"), Richard Stone, and Suzanna Stone, for
their joint response to Plaintiff's motion for summary judgment state that Plaintiff is not entitled
to a summary judgment as there are genuine disputes as to material facts, all as is more fully set
forth below.

The gist of Plaintiff's motion is that it issued payment and performance surety bonds for
several construction projects of Omni and claims it was required to expend in excess of $6.3
Million for which it seeks judgment against Omni and the Stones.  Defendants do not dispute the
existence of the bonds, nor do they dispute that the Stones were indemnitors on the bonds.

However, the amount of damages sought is so far out of the realm of reasonableness due to the failure of Plaintiff to properly mitigate the damages, that Plaintiff is not entitled to a judgment for the amounts sought, which are in genuine dispute.

**1.  The legal standard**.

The law with regard to summary judgments is well settled.  Rule 56(A) states a court shall grant summary judgment if there is "no genuine dispute as to any material fact…"  Here there is a genuine dispute of material facts which preclude a summary judgment.  See, also *Celotex Corp. v. Catrett* 477 U.S. 317(1986).

Plaintiff has claimed that pursuant to the Indemnity Agreement a sworn statement of loss shall be "prima facie" evidence of the amount of the loss and has claimed almost $6MM in losses[1], plus unspecified attorneys' fees and costs in excess of $457,000.  In this case, Defendants have raised in their answer the defense of failure to mitigate damages.

The issue of mitigation of damages is a question of reasonableness for a jury or the trier of facts.  *Smith v. Rowe*, 761 F.2d 360 (7th Cir. 1985).  In a similar bonding case where the surety was also claiming payments themselves constitute prima facie evidence of the fact and the amount of liability, the court, while ruling in favor of the bonding company on different facts, acknowledged that the prima facie evidence is not conclusive and is subject to being rebutted. *Liberty Mut. Ins. Co.v. Devere Constr. Co.*, 2017 U.S. Dist. LEXIS 27612.  That court further stated, "The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52."

---

[1] Plaintiff has alleged in subsequent discussions that the damages are continuing to accrue and are approaching $7MM.

## 2. Background

Plaintiff is claiming indemnification for six separate bonded jobs, plus costs and attorneys' fees for an aggregate claim of $6,324,124.63.  As will be shown below in more detail, some of the jobs were completed and others were substantially completed.   The amount spent by the bonding company is so out of whack on its face in proportion to the percentage of the jobs that were incomplete as to create an issue of fact regarding the reasonableness of the amounts expended.

The general process for getting paid on bonded jobs such as those involved in this case is that contractor submits periodic applications for payment in which the amount sought as well as the percentage of completion must be certified in order to be paid.  The request must then be approved by the owner or his representative as a prerequisite to receiving payment.    Each subsequent request for payment reflects the prior payments made to date, i.e., the payments that were approved and actually paid (which also indicates the owners had approved of the work up that point in time).  In Omni's case, it was forced to close its doors the first week of July, 2018 when it ran out of operating funds.  Thus, all of the applications for payment pre-date the closing of Omni's business in July, 2018.

### a. Village Cooperative of Lawrence job.

This job is by far the largest claim of Plaintiff.  The last payment request is dated June 1, 2018, and the last progress schedule goes through June, 2018.  See Exhibits A, B and C.  Those three documents reflect several important points,   One, the job was 82.98 percent complete by the end of May, 2018, (Exhibit A) and 88% complete by the end of June, 2018 (Exhibit  C). Two, there were prior payments totaling $6,869,308.00, which indicates the owner had approved and paid 77% of the job prior to the June 1, 2018 pay request.  Three, it shows a 10% retainage being held by the owner in the sum of $789,497.21.  Taken together, it shows that as of June 1, 2018,

there was 17% of a job originally costing $9,309,868.00 still to be performed, i.e., $1,582,677.56 yet to be performed, and the owner was still holding a retainage of $789,497.21. The total cost to complete as of May 31, 2018 was projected at $1,582,677.56 ($2,204,386.10 less the retainage). (See Exhibit B). Ignoring that the progress report as of June 30, 2018 reflects the job was actually 88% complete by the end of June, 2018 (Exh. C), the figures demonstrate that Plaintiff spent $4,404,390.34 plus some unidentifiable amount of costs and attorneys' fees to complete a job that should have cost a net of no more than $1,582,677.56. As of June 1, 2018, the owner of the project still owed Omni $1,582,677.56 for cost to complete the balance of the contract plus the retainage of $789,497.21, i.e., $2,204,383.10. However, the Plaintiff is claiming it spent $4,404,394.34, over and above what was still owed (not including any administrative costs Plaintiff may be allocating to that job). Thus, for a job which originally was to cost 9,309,868.00 and was 83% done by June 1, 2018, Plaintiff spent ***an additional $4,404,390.34,*** for a total cost to complete of $6,608,783.44. This is ***more than 4 times*** the cost to complete as of June 1, 2018 for a job that was at least 83% complete. The cost to complete 17% of this job by the Plaintiff was more than 2/3 of the entire original cost of the job. If one considers that as of June 30, 2018, right before Omni closed its doors, the job was 88% complete, and one adds in the administrative fees and costs, the numbers are even worse. It is significant to also note that before progress payments are made on jobs of this nature, the owners and lenders must approve and verify, including by inspection, the progress of the jobs. Below is a summary of the June 1, 2018 figures using an 83% completion rate, rather than 88% as of June 30, 2018.

| | |
|---|---|
| Contract Price | $ 9,309,868.00 |
| Total Complete | $ 7,894,972.11 |
| 10% retainage | $ 789,497.21 |
| Amount earned less retainage | $ 7,105,474.00 |
| Previous certificates for payments | $ 6,869,308.62 |
| Amount of job unfinished 17% - still to be paid | $ 1,582,677.56 |

| | |
|---|---|
| Balance available to finish   (including retainage and bal. of cost to complete) | $ 2,204,393.10 |
| Amount spent by Plaintiff | $ 4,404,390.34 |
| Total due from owner plus amount claimed by Plaintiff | $ 6,608,783.44 |

On its face, the amount spent by Plaintiff in completing the Lawrence job is so substantial and unreasonable as to create a genuine issue of a material fact as to the amount of damages sought by Plaintiff.

### b.   The Carmax job

The Carmax job was complete and was open for business when Omni closed its doors.  The only remaining items were punchlist items with $70,617.80 still owed to Omni. (Affidavit of Richard Stone and Exh. D). In this instance, Plaintiff is claiming it paid out $45,098.56 for a job that was 100% complete.

### c.  Hilton Home 2 Suites job

As relates to this job, Omni had walked off of the job due to the owner's default and failure to make timely payments for work done. The owner had previously made a bond claim against Plaintiff, which Omni believes was denied due to the owner's default.  Thus, Plaintiff later paid $349,796.94 for a job where the owner defaulted, something previously acknowledged by Plaintiff in its prior refusal to honor any claims.

### d.  Kroger Store job

The Kroger job was another completed job where a dispute arose with an electrical contractor.  A bond was issue to remove the lien from the job, resulting in an agreement by Omni to make payments to satisfy the contractor whose lien had been bonded off of the job, i.e. Thomas Electric.  A settlement was reached to make installments to that contractor, which payments were defaulted upon when Omni ceased its operations. The settlement that was reached was

$250,000.00, as evidenced by the affidavit of Richard Stone.  However, the Plaintiff paid in excess of that amount and paid $277,273.21.

### e. Lee's Summit job

Lee's Summit job was in effect a predecessor job to the Village Cooperative of Lawrence job (the same owners as the Village of Lawrence job). It appears Plaintiff vastly overpaid the same owner on this job as well.   This job was a completed nursing home.  The people were moved in.  There was retainage of $498,000 owed to Omni for this job, some of which would have been paid to the subcontractors, and some of which would be money due Omni. See Exhibit E.  There were disputes with two subcontractors who had failed to properly perform services with regard to the sewer water retention system on the outside of the premises.  One of the subcontractors agreed to fix its mistake, the other refused to do so until the owner stepped in and agreed to pay some more money to him.   (The subcontractor who refused to correct its error had posted its own payment and performance bond, which neither the owner nor Plaintiff pursued.)   Ultimately, the owner intervened and agreed to put $200,000 into escrow in order to help resolve the issues and get the disputes resolved[2].   A copy of the not quite complete escrow agreement is attached as Exhibit F, as the final version Ultimately, Plaintiff paid claims of $735,527.21.  This amount was over and above the $498,000 of retainage still owed to Omni, which the owner never paid.  Thus, the net difference paid out was over $1.2 Million for a job that was complete but needed some correction by two third party subcontractors, and payment of some subcontractors out of the retainage.

Omni believes approximately $350,000 of the retainage was due to subcontractors who had performed services.  That would have left approximately $150,000 due to Omni from the owner.

---

[2] The attached exhibit is not signed as it appears to have occurred a few days before Omni's doors were closed but the emails which accompanied it evidence the deal that had been reached and was in the process of being finalized.

While there does not seem to be any intended agreement to repay the owner for the $200,000 escrow payment, even if that were to be paid, the Plaintiff claims it paid out $735,527.21, meaning that it paid out $535,000 extra plus Omni failed to receive its share of the retainage, approximately $150,000.

Given this was the same owner as was involved in the Village Cooperative of Lawrence, it is clear the owner took substantial advantage of the Plaintiff who again failed to property mitigate its damages, i.e., by paying out approximately $685,000 more than was reasonable.

### f. Primrose job

The Primrose job is one which should have nothing to do with Plaintiff. Primrose obtained a default judgment against Omni only, not the Stones, after Omni closed its doors and could not afford to defend what it believed to be a baseless claim. Primrose previously had made a claim on the bond against Plaintiff which Plaintiff rejected because it was untimely. Primrose, acting like the door to door salesman who is pushed out the front door only to be found climbing in the side window, has now included Plaintiff in a separate, and baseless lawsuit, along with Suzanna Stone who had no involvement in the business.

It appears from the documents submitted by Plaintiff in this case that it paid $27,500 in legal fees to determine that the prior bond claim of Primrose was untimely. Given the nature of Plaintiff's business it is hard to imagine how Plaintiff spent $27,500 to determine that the time had expired on the bond claim.

Further, to demonstrate Plaintiff's failure to mitigate, Plaintiff has now made what Omni and the Stones believe is a substantial settlement offer to Primrose in the other pending litigation, which Plaintiff will likely try to claw back from the Defendants. Given that Plaintiff already determined the bond claim was untimely and denied it for that reason, any meaningful settlement

offer appears to greatly exceed the costs of what should be a fairly simple motion to dismiss, which has not been filed by Plaintiffs.  Again, Plaintiff appears to be throwing substantial amounts of money around without regard to the merits, and without mitigating its damages.

**Miscellaneous**

A review of Plaintiff's payment ledgers, which also have substantial redaction making it difficult to fully follow all of the payments, indicates very large payments to third parties, which are in no way identified as to the services or reasons paid.  Plaintiff appears to have paid out millions of dollars to third parties without proper due diligence, and after having been provided access to all of Omni's records and refusing any assistance in ascertaining the merits of the claims from the people who best know the underlying facts.  One recurring pattern appears to be that the Plaintiff in almost each instance ignored the substantial retainage that was owed to Omni on the various jobs, paid the subcontractors' claims relating to the retainage without pursuing recovery of the retainage which reflected work that was already done and approved.  The total disregard for the merits of the claims and the excessive amounts paid, considering the percentage of completion of the work and the retainages owed, on their face raise a genuine dispute over the reasonableness of Plaintiff's actions and its failure to mitigate damages.

**SUMMARY**

The sheer magnitude of the amounts paid out by Plaintiff in comparison to how much of the jobs had been completed, without regard to the assistance offered by defendants to complete the jobs and provide information and supply underlying facts, Plaintiff's motion on its face raises significant and genuine disputes over material facts, which preclude the granting of summary judgment.

/s/ Richard A. Baumgart
Richard A. Baumgart (0002664)

Dettelbach Sicherman & Baumgart LLC
55 Public Square, 21st Floor
Cleveland, OH 44113-1902
T 216-696-6000
F 216-696-3338
rbaumgart@dsb-law.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing response to Plaintiff's motion for summary judgment will be served via the Court's electronic servicing to:

Lee Brewer, lbrewer@bryanandbrewer.com


/s/ Richard A. Baumgart
Richard A. Baumgart, Attorney